## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PINCHAS RAUL,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br><br>SILVERBOW RESOURCES, INC., MARCUS C. ROWLAND, MICHAEL DUGINSKI, GABRIEL L. ELLISOR, DAVID GEENBERG, CHRISTOPH O. MAJESKE, CHARLES W. WAMPLER, SEAN C. WOOLVERTON,<br><br>　　　　　Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Pinchas Raul ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by SilverBow Resources, Inc. ("SilverBow" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning SilverBow and the Defendants.

**SUMMARY OF THE ACTION**

1. This is an action brought by Plaintiff against SilverBow and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed transaction (the "Proposed Transaction") between the Company, Sundance Energy, Inc. and certain affiliated entities ("Collectively Sundance").

2. On April 13, 2021, the Company entered into a Purchase and Sale Agreement (the "Merger Agreement") with Sundance, Armadille E&P ("Armadillo"), SEA Eagle Ford, LLC ("SEA," and together with Armadillo and Sundance, collectively, "Sellers" and each a "Seller") and SilverBow Resources Operating LLC ("Buyer" and together with SilverBow, "Buyer Parties"). Pursuant to the terms of the Merger Agreement, Buyer will acquire, directly or indirectly, all of Sellers' right, title and interest in certain oil and gas properties and related assets located in Atascosa, La Salle, Live Oak, and McMullen Counties, Texas.

3. On May 9, 2022, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against SilverBow and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to SilverBow shareholders before the vote on the Proposed Transaction or, in the event the

Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of SilverBow shares.

9. Defendant SilverBow is incorporated under the laws of Delaware and has its principal executive offices located at 920 Memorial City Way, Suite 850, Houston, Texas 77024. The Company's common stock trades on the New York Stock Exchange under the symbol "SBOW."

10. Defendant Marcus C. Rowland ("Rowland") is and has been the Chairman of the Board of SilverBow at all times during the relevant time period.

11. Defendant Michael Duginski ("Duginski") is and has been a SilverBow director at all times during the relevant time period.

12. Defendant Gabriel L. Ellisor ("Ellisor") is and has been a SilverBow director at all times during the relevant time period.

13. Defendant David Geenberg ("Geenberg") is and has been a SilverBow director at all times during the relevant time period.

14. Defendant Christoph O. Majeske ("Majeske") is and has been a SilverBow director at all times during the relevant time period.

15. Defendant Charles W. Wampler ("Wampler") is and has been a SilverBow director at all times during the relevant time period.

16. Defendant Sean C. Woolverton ("Woolverton") is and has been the Chief Executive Officer ("CEO") and a director of SilverBow at all times during the relevant time period.

17. Defendants Rowland, Duginski, Ellisor, Geenberg, Majeske, Wampler, and Woolverton are collectively referred to herein as the "Individual Defendants."

18. The Individual Defendants, along with Defendant SilverBow, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

19. SilverBow, an oil and gas company, acquires and develops assets in the Eagle Ford shale and Austin Chalk located in South Texas. As of December 31, 2021, it had proved reserves of 1,416 billion cubic feet of natural gas equivalent. The company was formerly known as Swift Energy Company and changed its name to SilverBow Resources, Inc. in May 2017.

**The Company Announces the Proposed Transaction**

20.     On April 14, 2022, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> HOUSTON--(BUSINESS WIRE)--SilverBow Resources, Inc. (NYSE: SBOW) ("SilverBow" or "the Company") announced today it has entered into a definitive agreement to acquire substantially all of the assets of Sundance Energy, Inc. and certain affiliated entities (collectively, "Sundance") for a total purchase price of $354 million and up to $15 million of contingent payments based on future commodity prices. The Sundance transaction, which is expected to close in the third quarter of 2022, has been unanimously approved by the Boards of Directors of both companies. The closing of the transaction is subject to SilverBow shareholder approval and satisfaction or waiver of customary closing conditions.
>
> SilverBow also announced today that it has entered into a definitive agreement to acquire certain assets from SandPoint Operating, LLC, a subsidiary of SandPoint Resources, LLC, (collectively, "SandPoint") for a total purchase price of $71 million. The oil and gas assets target the Eagle Ford and Olmos formations in La Salle and McMullen counties. The SandPoint transaction has been unanimously approved by the Boards of Directors of both companies and is expected to close in the second quarter of 2022, subject to customary closing conditions.
>
> Sundance Overview:
>
> - Compelling industrial logic given highly contiguous acreage to SilverBow's existing position; adds 39,000 net acres in Atascosa, La Salle, McMullen and Live Oak counties
> - January 2022 net production of 11,100 Boe/d (84% liquids / 65% oil)
> - Proved Developed Producing ("PDP") PV-10 of approximately $277 million[1]
> - Approximately 200 gross / 155 net de-risked, high return locations with IRRs exceeding 200% at 4/6/22 NYMEX strip pricing
> - 2022E Adjusted EBITDA of approximately $170 million[2,3], implying an attractive 2.1x purchase price multiple. Expected to add significant free cash flow ("FCF") in 2022
>
> SandPoint Overview:
>
> - Contiguous acreage in La Salle and McMullen counties, with ~27,000 net acres
> - May 2022E net production of 4,650 Boe/d (70% gas, 30% liquids) with two new wells expected to be coming online in the second quarter of 2022
> - PDP PV-10 of approximately $89 million[1]
> - Approximately 45 gross / 44 net de-risked, high return locations with IRRs exceeding 80% at 4/6/22 NYMEX strip pricing

5

- 2022E Adjusted EBITDA of approximately $29 million[2,3], implying an attractive 2.4x purchase price multiple

Pro Forma Company Including Sundance and SandPoint:

- Projected full year 2022 key metrics[4]:
  - Net production of 300-330 MMcfe/d (64% gas)
  - Adjusted EBITDA of $490-$530 million
  - Capital expenditures of $260-$300 million
  - FCF of $180-$250 million
- Increases 2022E FCF per share by approximately 50% compared to standalone SilverBow[2,3]
- Conservative leverage profile targeting total debt to Adjusted EBITDA less than 1.0x by YE22
- Double-digit annual production growth with less than 60% re-investment rate through 2024, expected to generate greater than $1.0 billion of FCF[2,4] during the same time period
- Increases SilverBow's acreage footprint by 50% to approximately 198,000 net acres
- Deep inventory of more than 645 gross / 507 net high-return locations across the Company's Eagle Ford and Austin Chalk focus areas
- Pro forma PDP reserves of approximately 750 Bcfe and PDP PV-10 of $1.6 billion[1,2]
- Estimated annual synergies of approximately $15 million with further potential savings upon integration. Synergies not included in metrics presented
- SilverBow intends to run one drilling rig on the acquired assets starting in the second half of 2022 in addition to the one rig SilverBow is currently running
- Updated full year 2022 guidance and expected upsized borrowing base amount to be announced in conjunction with the closing of both transactions

*MANAGEMENT COMMENTS*

Sean Woolverton, SilverBow's Chief Executive Officer, commented, "SilverBow has a disciplined approach towards growth based on our strict investment criteria. Today's transformative news builds on our recent series of transactions while advancing a number of our strategic objectives. These deals mark the fourth and fifth acquisitions we have announced since the second half of last year, which cumulatively total over $550 million of transaction value. We are significantly increasing SilverBow's size, scale and cash flow while maintaining a conservative balance sheet and a leverage ratio of less than 1.0x by year-end 2022. Pro forma for the transactions, liquids production will comprise a third of our production mix, allowing us to capture margin uplift from the current strength in liquids pricing. SilverBow will now have even greater optionality to allocate capital between both oil and gas development, which has been a cornerstone of the Company's strategy over the last few years."

Mr. Woolverton commented further, "There is strong industrial logic for these acquisitions as the acreage overlap will allow SilverBow to drive synergies and optimize development plans. We estimate we have the ability to generate approximately $450 million of incremental free cash flow through 2024, with total SilverBow pro forma free cash flow greater than a $1.0 billion. We have already identified approximately $15 million of annual synergies through a combination of operational and corporate efficiency gains. The significant production and cash flow from existing wells, coupled with a conservative balance sheet and ample liquidity, positions SilverBow to self-fund high rate of return projects and simultaneously further our consolidation efforts. While we have created significant shareholder value to-date, we are excited about the prospects that lie ahead. We look forward to integrating our latest transactions and continuing to unlock value for our stakeholders moving forward."

### SUNDANCE TRANSACTION DETAILS AND FUNDING

The Sundance transaction has an effective date of May 1, 2022 and is expected to close in the third quarter of 2022. The aggregate purchase price of approximately $354 million consists of $225 million in cash, subject to customary closing adjustments, and 4.1 million shares of SilverBow common stock valued at $129 million based on its 30-day volume weighted average price as of April 8, 2022. Up to an additional $15 million dollars of contingent payments may be payable to Sundance based upon future commodity prices. In addition to customary closing adjustments, SilverBow will benefit from a $16.5 million downward adjustment to cash consideration at close related to the assumption of Sundance's existing hedge book. SilverBow intends to fund the cash portion of the consideration, fees and expenses with cash on hand and borrowings under its revolving credit facility.

### SANDPOINT TRANSACTION DETAILS AND FUNDING

The SandPoint acquisition also has an effective date of May 1, 2022 and is expected to close in the second quarter of 2022. The aggregate purchase price of approximately $71 million consists of $31 million in cash, subject to customary closing adjustments, and 1.3 million shares of SilverBow common stock valued at $40 million based on its 30-day volume weighted average price as of April 8, 2022. SilverBow intends to fund the cash portion of the consideration, fees and expenses with cash on hand and borrowings under its revolving credit facility.

### INVESTOR PRESENTATION AND OTHER DETAILS

SilverBow has posted a presentation highlighting the transactions under the "Investor Relations" section of the Company's website, www.sbow.com. Investors are encouraged to access and review the transaction presentation for additional details and information.

### ADVISORS

Barclays is serving as financial advisor to SilverBow on the Sundance transaction. Gibson, Dunn & Crutcher, LLP is serving as legal advisor to SilverBow on both transactions.

Piper Sandler & Co. and TD Securities (USA) LLC are serving as financial advisors to Sundance. Kirkland & Ellis LLP is serving as legal advisor to Sundance.

Latham & Watkins, LLP is serving as legal advisor to SandPoint.

### FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

21. On May 9, 2022, the Company authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

22. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projections

23. The Proxy Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

24. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such

8

projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

25. In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

26. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Sales Process**

27. The Proxy Statement contains information concerning the background of the Proposed Transaction, but fails to disclose material information concerning such.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

28. First, the Proxy Statement fails to disclose sufficient information concerning the number and nature of all confidentiality agreements entered into between the Company and any interested third party during the sales process, as well as whether any agreement contained "don't-ask, don't waive" or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid.

29. The Proxy Statement fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction which must be disclosed to stockholders.

30. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Barclays' Financial Opinion

31. The Proxy Statement contains the financial analyses and opinion of Goldman Barclays Capital Inc. ("Barclays") concerning the Proposed Transaction, but fails to provide material information concerning such.

32. With respect to Barclays' *Selected Comparable Transaction Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the transactions observed in the analysis.

33. With respect to Barclays' *Selected Comparable Company Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the companies observed in the analysis.

34. With respect to Barclays' *Equity Research Analyst Price Targets Analysis*, the Proxy Statement fails to disclose: (i) the individual price targets observed; (ii) the sources thereof.

35. Lastly, the Proxy Statement fails to disclose the timing and nature of the past financing services that Barclays and/or its affiliates provided to SilverBow, Sundance, and/or their affiliates, including the amount of compensation Barclays received or expects to receive for providing each service within the past two years of the date of its fairness opinion.

36. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

37. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the

11

use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

40. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

41. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

42. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

43. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

44. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

45. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

46. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

47. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that

Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

48. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49. The Individual Defendants acted as controlling persons of SilverBow within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of SilverBow, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

52. In addition, as set forth in the Proxy Statement at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.	Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.	Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.	Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: _____ __, ____

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW PLLC**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*